**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| ZHENISHBEK TEMIRBAEV, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-cv-00255-JAR |
| | ) | |
| GARY STOLZER, et al., | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Zhenishbek Temirbaev's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner names as Respondents Gary Stolzer in his official capacity as Sheriff of Sainte Genevieve County, Missouri, where Petitioner is in custody (*see* 28 U.S.C. § 2242, ¶ 2), and Samuel Olson in his official capacity as Chicago Field Office Director of Enforcement and Removal Operations for U.S. Immigration and Customs Enforcement (ICE).

Petitioner asserts that he is being unlawfully detained without a bond hearing in violation of his Fifth Amendment right to procedural due process. The United States Attorney for the Eastern District of Missouri filed the Government's response to the petition on November 12, 2026.[1] (Doc. 9). Petitioner filed a reply on November 20. For the reasons set forth below, the Court concludes that Petitioner's continued detention without an individualized bond hearing

---

[1] The U.S. Attorney's Office represents Sheriff Stolzer pursuant to an intergovernmental agreement. (Doc. 9 at 1 n.1).

violates the Due Process Clause of the Fifth Amendment and that a prompt, individualized bond hearing is an appropriate remedy.

## BACKGROUND

Petitioner is a citizen of Kyrgyzstan who entered the United States without inspection on June 12, 2023. Petitioner evidently applied for asylum upon entry. On June 21, 2023, the Department of Homeland Security (DHS) issued a Notice to Appear indicating that an asylum officer found that Petitioner had demonstrated a credible fear of persecution. (Doc. 1-1 at 2). The Notice initiated removal proceedings and set a show cause hearing for October 19, 2023, before an immigration court in Philadelphia, Pennsylvania. (*Id.*). In the interim, on June 27, 2023, DHS released Petitioner on parole. (Doc. 14-1). The record contains no further particulars regarding Petitioner's immigration proceedings but, according to the petition, Petitioner has resided in Philadelphia for over three years. During that time, he obtained employment authorization enabling him to work lawfully as a commercial truck driver. Petitioner has no criminal record.

On October 12, 2026, while driving through a Missouri weigh station, Petitioner was arrested by ICE and transferred to the Sainte Genevieve County Detention Center, where he has remained in ICE custody pursuant to 8 U.S.C. § 1225(b)(2)(A) (permitting the detention of applicants for admission pending removal proceedings). Petitioner's removal proceedings are now pending before an immigration judge in Kansas City, Missouri, but no hearing is scheduled. (Doc. 14 at 3). Petitioner centrally argues that his prolonged detention without a bond hearing violates principles of procedural due process under the Fifth Amendment.[2]

[2] Petitioner concedes that Eighth Circuit precedent forecloses any argument that his detention is unlawful under 8 U.S.C. § 1225(b)(2)(A). *See Avila v. Bondi*, 170 F.4th 1128, 1134 (8th Cir. 2026). The Court need not address the Government's arguments on that basis.

## DISCUSSION

**Legal Standard**

"Writs of habeas corpus may be granted by...the district courts...within their respective jurisdiction." 28 U.S.C. § 2241(a). "Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). A district court may grant a writ of habeas corpus if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).[3]

**The Parties' Arguments**

The Government asserts that Petitioner's detention is constitutionally permissible under *Banyee v. Garland*, where the Eighth Circuit held that prolonged detention without a bond hearing doesn't violate the due process rights of convicted criminal noncitizens detained under 8 U.S.C. § 1226(c) so long as deportation "remains a possibility." 115 F.4th 928, 933 (8th Cir. 2024) (applying *Demore v. Kim*, 538 U.S. 510 (2003)). (Doc. 9 at 8). Petitioner argues that *Banyee* is materially distinguishable because convicted noncitizens detained under § 1226(c) received the procedural protections of due process in their underlying criminal cases and statistically pose a heightened risk of flight or recidivism. (Doc. 14 at 6). By contrast, DHS released Petitioner three years ago and permitted him to build a life in the community, yet he has had no opportunity to demonstrate that he is *not* a danger or flight risk.

Both parties acknowledge that courts in this district and circuit are split on this issue. Some have concluded that the Constitution doesn't require a showing of dangerousness or flight risk to detain a deportable noncitizen because such considerations are not explicitly contemplated for detention under § 1225(b)(2)(A). *See e.g., Baquedano v. Johnson*, No. 1:26-CV-178-SRC,

[3] The Government concedes that administrative exhaustion is unnecessary here. (Doc. 9 at 4 n.5).

2026 WL 3120663 (E.D. Mo. Oct. 19, 2026) (applying *Banyee*); *Lugo-Solet v. Mullin*, No. 1:26-CV-52-ZMB, 2026 WL 1162233 (E.D. Mo. Apr. 29, 2026) (same); *Zhuang v. Bondi*, No. 1:25-CV-201-CMS, 2026 WL 352872 (E.D. Mo. Feb. 9, 2026) (applying *Demore*); *Garcia v. Stolzer*, No. 1:26-CV-00175-SNLJ, 2026 WL 2294441, at *2 (E.D. Mo. Aug. 10, 2026) (citing *Banyee* and *Demore*). Other courts have concluded that, absent any process in an underlying criminal case justifying detention under § 1226, noncitizens detained pursuant to § 1225 are entitled to procedural due process under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See e.g., Mekonnen v. Stolzer*, No. 1:26-CV-00122-AGF, 2026 WL 2029972 (E.D. Mo. July 14, 2026); *Paez-Herrera v. Stolzer*, No. 1:26-CV-00078-AGF, 2026 WL 2198535 (E.D. Mo. July 30, 2026); *Garcia Leal v. Stolzer*, No. 1:26 CV 157 RWS, 2026 WL 2194741 (E.D. Mo. July 30, 2026); *Chacon-Diaz v. Stolzer*, No. 1:26-CV-00217-AGF, 2026 WL 3232513 (E.D. Mo. Oct. 28, 2026); *Patel v. Stolzer*, No. 1:26 CV 226 RWS, 2026 WL 3522266 (E.D. Mo. Nov. 16, 2026); *Medina v. Arnott*, No. 6:26-CV-3170-MDH, 2026 WL 915582 (W.D. Mo. Apr. 3, 2026); *Patel v. Arnott*, No. 6:26-CV-3207-MDH, 2026 WL 1091195 (W.D. Mo. Apr. 22, 2026); *Jesus Alejandro G. A. v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138 (D. Minn. May 18, 2026); *Begashvili v. Wright*, No. 4:26-cv-1195-KGB, Doc. 9 (E.D. Ark. Nov. 17, 2026); *Fall v. Easley*, No. 4:26-cv-4010-SOH (W.D. Ark. Apr. 17, 2026).

Briefing is underway to resolve this issue in the Eighth Circuit. *See Lugo-Solet v. Mullin*. No. 26-2052 (8th Cir.). In the interim, this Court is firmly convinced that Petitioner's detention without any process whatsoever violates the Fifth Amendment.[4]

---

[4] The Court fully adopts Judge Fleissig's thorough analysis in *Paez-Herrera* and *Mekonnen*, reprised in summary herein.

**<u>Procedural Due Process</u>**

"No person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Fifth Amendment applies equally to citizens and noncitizens. *Id.* at 693. Noncitizens are entitled to due process protections "whether their presence [in the country] is lawful, unlawful, temporary, or permanent." *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026) (quoting *Zadvydas*, 533 U.S. at 693). Detention "should effectuate two regulatory goals: (1) ensuring the appearance of noncitizens at future immigration proceedings and (2) preventing danger to the community." *Id.* (citing *Zadvydas*, 533 U.S. at 690).

The Government contends that Petitioner's due process claim should fail under *Banyee* and *Demore*. But neither of those cases involved the detention of a released applicant for admission under § 1225(b)(2)(A). Rather, they examined detention under a different statute, § 1226(c)(1)(B), applicable to noncitizens who become subject to deportation for certain criminal offenses. In *Demore*, detention was constitutionally permissible because it prevented criminal noncitizens from fleeing or committing new crimes prior to removal, and due process was satisfied in that the detainee "'became deportable under § 1226(c) only following criminal convictions that were secured following full procedural protections'." *Mekonnen*, 2026 WL 2029972, at *4 (citing *Demore*, 538 U.S. at 525 n.9). In *Banyee*, an immigration judge had treated the detainee's robbery-with-a-dangerous-weapon conviction as an aggravated felony. 115 F.4th at 933.

Petitioner's circumstances are entirely different. He entered the country three years ago, applied for asylum, demonstrated a credible fear of persecution, was granted release by DHS, and was authorized to work. He has no criminal record. He is being detained under § 1225(b)(2)(A), which requires only that an applicant for admission is "not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A). For nearly three decades until last year, the Government interpreted this statute such that applicants like Petitioner were eligible for a bond hearing pending further immigration proceedings. *Avila v. Bondi*, 170 F.4th 1128, 1138-41 (8th Cir. 2026) (Erickson, J., dissenting). Unlike in *Demore* and *Banyee*, Petitioner has not become deportable consequent to any criminal conduct, nor has he received any form of process examining his risk of flight or danger to the community. Absent any such determination, the Court turns to the traditional standards of procedural due process set forth by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

With respect to the first factor, courts have recognized that an individual who has been released from custody to live a productive life in the community obtains a protected interest in his continued liberty. *Paez-Herrera*, 2026 WL 2198535, at *6; *Mekonnen*, 2026 WL 2029972, at * 6. *See also Muse v. Mullin*, No. 26-CV-4024-CJW-MAR, 2026 WL 1008532, at *4 (N.D. Iowa Apr. 14, 2026) ("Here, petitioner acquired a liberty interest in release on his own recognizance when the government released him in 2023. The government has now arbitrarily revoked that interest by detaining him without demonstrating danger or flight risk."). "It is from this liberty interest that detention without an individualized bond hearing can become

constitutionally impermissible, even if the detention has a theoretical end point." *Lopez-Campos*, 175 F.4th at 734. In this Court's view, considering Petitioner's release by DHS and his three productive years in this country, Petitioner has acquired a liberty interest to be free from arbitrary detention.

The second factor, as applied here, examines whether Petitioner's liberty was erroneously deprived through the procedures used (or not used, in this case) and whether additional procedural safeguards would add value. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333. The Government's ability to detain noncitizens during removal proceedings is not limitless and should be tied to the goals of ensuring court appearances or preventing danger to the community. *Zadvydas*, 533 U.S. at 690. Here, the sudden and arbitrary revocation of Petitioner's release by DHS and resulting detention is unsupported by any evidence of danger or flight risk. Petitioner has had no opportunity to make his case regarding these considerations. He unquestionably has been and will continue to be erroneously deprived of his liberty interest until that occurs. The additional procedural safeguard of an individualized bond hearing adds undisputable constitutional value.

On the third factor, because the Government relies entirely on *Banyee*, it offers no argument suggesting that a bond hearing would be unduly burdensome, and the Court sees no legitimate governmental interest in detaining Petitioner without due process. *See Patel v. Arnott*, No. 6:26-CV-3207-MDH, 2026 WL 1091195, at *4 (W.D. Mo. Apr. 22, 2026) ("A bond hearing would not undermine immigration enforcement; it would ensure that detention is exercised lawfully and in accordance with the Constitution.").

In sum, the *Mathews* factors weigh heavily in Petitioner's favor, and his continued detention without any process whatsoever plainly violates the Fifth Amendment. The Court further finds that the proper remedy is a prompt bond hearing with sufficient notice to Petitioner to allow his counsel to attend and prepare. The Court rejects the Government's suggestion that immigration courts lack jurisdiction to conduct bond hearings on these facts. (Doc. 9 at 5, citing *Matter of Hurtado*, 29 I&N Dec. 216 (BIA 2025)). *See Belsai D.S. v. Bondi*, 810 F. Supp. 3d 1016, 1025 n.5 (D. Minn. 2025) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024)). The Court is aware of recent cases in this district where bond hearings were held and noncitizens detained under § 1225 were released on bond. *See e.g., Paez-Herrera*, No. 1:26-cv-78-AGF (Doc. 27); *Mekonnen*, No. 1:26-cv-122-AGF (Doc. 21). The Court will grant Petitioner's habeas petition to the extent he requests an individualized bond hearing. (Doc. 14 at 11).

**Attorney Fees**

Finally, Petitioner requests leave to seek an award of attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412. While the Court is unaware of such awards being granted in this district to date, other courts in this circuit have entertained and granted motions for attorney fees under the EAJA. *See e.g., Elgendy v. Blanche*, No. 0:26-CV-00646-SHL-SGE, 2026 WL 3321405 (D. Minn. Sept. 30, 2026); *Patel v. Arnott*, No. 6:26-CV-3207-MDH, 2026 WL 1091195, at *4 (W.D. Mo. Apr. 22, 2026). This Court reserves the merits for another day but will not preclude Petitioner from filing a motion should he elect to do so.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Zhenishbek Temirbaev's petition for a writ of habeas corpus under 28 U.S.C. § 2241 is **GRANTED in part as follows:**

1. By no later than **fourteen (14) days** from the date of this Order, the Government must provide Petitioner an individualized bond hearing before an immigration judge. The Government must provide Petitioner and his counsel with advanced notice of the hearing promptly after it is scheduled and sufficient to allow his counsel to attend and prepare.

2. If the Government does not provide Petitioner with a bond hearing in accordance with this Order, the Government must immediately release Petitioner from detention with his personal effects.

3. By **5:00 p.m. on December 11, 2026**, the Government must provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order or, if no bond hearing was held, concerning the circumstances of Petitioner's release from detention.

**IT IS FURTHER ORDERED** that the Government is enjoined from relocating Petitioner outside the jurisdiction of this Court prior to compliance with this Order.

**IT IS FINALLY ORDERED** that Petitioner may submit an application for attorney fees under the EAJA within **thirty (30) days**.

A separate Judgment shall accompany this Memorandum and Order.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

Dated this 24th day of November 2026.